1
2
3
4
5               UNITED STATES DISTRICT COURT
6           NORTHERN DISTRICT OF CALIFORNIA
7                 EUREKA DIVISION
8

9 KIM RAE DEGRAVE,                 No. 1:13-CV-2382 NJV

10          Plaintiff,             ORDER RE CROSS MOTIONS
                                FOR SUMMARY JUDGMENT

11      v.                        (Docket Nos. 19, 20)

12 CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
13

14          Defendant.
      _____/

15

16       Plaintiff Kim Rae Degrave seeks judicial review of an administrative law judge ("ALJ")

17 decision denying her application for supplemental security income ("SSI") benefits under Title XVI

18 of the Social Security Act. (Doc. 19.) Plaintiff's request for review of the ALJ's decision was

19 denied by the Appeals Council. (Administrative Record ("AR") 4-7.) The decision is thus the "final

20 decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C.

21 §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. (Docs.
5, 14.)

22       For the reasons stated below, the court will grant Plaintiff's motion for summary judgment in

23 part and will grant Defendant's motion for summary judgment in part.

24                      **LEGAL STANDARDS**

25       The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

26 conclusive." 42 U.S.C. § 405(g). A district court has a limited scope of review and can only set

27 aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal error.

28 *Flaten v. Sec'y of Health and Human Servs*., 44 F.3d 1453, 1457 (9th Cir. 1995). Substantial
evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as

United States District Court
For the Northern District of California

a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 979 (9th Cir. 1997). "In determining whether the Commissioner's findings are support by substantial evidence," a district court must review the administrative record as a whole, considering "both the evidence that supports and the evidence that detracts from the Commissioner's conclusions." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The ALJ is "responsible for determining credibility, resolving conflict in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). The Commissioner's conclusion is upheld where evidence is susceptible to more than on rational interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). If the evidence can support either outcome, the court may not substitute its judgment for that of the Commissioner. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

**DISCUSSION**

**I.     SUMMARY OF MEDICAL EVIDENCE**

The ALJ determined that Plaintiff's severe impairments are affective disorder, anxiety disorder and substance disorder in remission. (AR 35.) Plaintiff contends that she also has the severe impairment of hand tremors that impacts her ability to perform light and sedentary work.

Plaintiff has a history of mental problems including a suicide attempt at age eighteen following the stillbirth of a child (AR 245), and substance abuse (AR 278). She has a criminal history including twenty-three arrests and several periods of incarceration totaling ten years in prison for forgery, receiving stolen property, drug possession and sales, with her most recent release being in 2010. (AR 278.) While she was in custody, Plaintiff received psychiatric treatment and medication for bipolar disorder with severe mood swings. (AR 241, 251.) C. Taylor, Psy.D., examined Plaintiff on December 20, 2007, and noted poor comprehension, paranoid ideation, poor insight and judgment, impulsive behavior, and moderately impaired concentration, memory and attention. (AR 254.) On Plaintiff's release from prison in 2010, she began her first consistent mental health treatment, which was continuing at the time this appeal was filed. Plaintiff considers herself an alcoholic; her last drink was several years ago. (AR 278.)

United States District Court

For the Northern District of California

2

**United States District Court**
For the Northern District of California

1    At the request of the Department of Social Services, Robert Bilbrey, Ph.D., performed a

2    consultative psychological evaluation with testing on April 6, 2010.  (AR 277-282.)  He found

3    Plaintiff's overall cognitive functioning "in the Mild range of Mental Retardation and that her

4    academic functioning is very low." (AR 282.)  Dr. Bilbrey  noted, however, that "this result is

5    inconsistent with her presentation and previous history of being able to work, drive and commit

6    crimes."  *Id.*  He found that Plaintiff appeared to be suffering from the symptoms of Bipolar

7    Disorder, and opined that her report of hallucinations after a prolonged period of drug use would

8    suggest the presence of drug psychosis.  (AR 281.)  Dr. Bilbrey found that Plaintiff had depression

9    and reported that she continued to have "anxiety and panic attacks with some continuing

10   Agoraphobia." (*Id.*)

11   On April 22, 2010, Plaintiff was seen at Eureka Community Health Center, her primary

12   treatment provider, for treatment of depression and anxiety.  (AR 293.)  Her primary diagnosis was

13   listed as "Bipolar 2 disorder." (*Id.*)  She complained of trouble concentrating, panic attacks and

14   manic episodes. (*Id.*)

15   On July 2, 2010, Plaintiff was seen at County of Humboldt - DHHS, Mental Health Branch

16   and diagnosed with "Major Depression, recurring, severe, with psychotic features," and "anxiety

17   disorder."  (AR 388.)  A GAF[1] of 55 was noted by Dr. Harprett Duggal, M.D., on August 27, 2010.

18   (AR 404.)  Throughout the relevant time period, Plaintiff's GAF fluctuated between 45 and 55.  (AR

19   531, 542, 553, 565, 573.)

20   Plaintiff's physical complaints, found by the ALJ to be non-severe, include back pain and hip

21   pain.  (AR 35.)  Plaintiff was evaluated for physical therapy on April 19, 2011.  (AR 473-477.)

22   Physical Therapist Amber Oke found that Plaintiff had "[m]oderate difficulty with transfers sit to

23   stand to sit due to pain and decreased strength," and "[m]oderate difficulty with standing more than

24   5 minutes and walking more than 10 minutes due to pain and decreased strength."  (AR 473.)

25   Limited supine passive straight leg raise was also found.  (AR 474.)  Plaintiff visited Urgent Care at

26   ───────────────────

27   [1]The GAF, or Global Assessment of Functioning, considers "psychological, social and
occupational functioning on a hypothetical continuum of mental health-illness."  Scores of fifty and
below denote, "Serious symptoms .   .  . OR any serious impairment in social, occupational or school

28   functioning."  DSM-IV, American Psychological Association.  (The GAF was eliminated in DSM-V
in 2013.)

United States District Court

For the Northern District of California

1    St. Joseph's Hospital on March 16, 2011, complaining of back pain.  (AR 500.)  She was found to be

2    suffering from left lower extremity lumbar radiculopathy.  (AR 501.)  In reviewing a lumbosacral x-

3    ray dated May 25, 2010, Magie M. Malaro, M.D., stated,  "[m]ild degenerative change is noted

4    throughout the lumbar spine."  (AR 513.)

5    **II.      FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY**

6          A person filing a claim for social security disability benefits ("the claimant") must show that

7    he has the "inability to do any substantial gainful activity by reason of any medically determinable

8    physical or mental impairment" which has lasted or is expected to last for twelve or more months.

9    20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1509.  The ALJ must consider all evidence in the claimant's

10   case record to determine disability , *id*. § 404.1520(a)(3), and must use a five-step sequential

11   evaluation to determine whether the claimant is disabled, *id*. § 404.1520.  "[T]he ALJ has a special

12   duty to fully and fairly develop the record and to assure that the claimant's interests are considered."

13   *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

14         At Step One, the claimant bears the burden of showing that she has not been engaged in

15   "substantial gainful activity" since the alleged date the claimant became disabled.  20 C.F.R.

16   §§ 404.1520(b).  If the claimant has worked and the work is found to be substantial gainful activity,

17   the claimant will be found not disabled.  *Id.*  The ALJ found that Plaintiff had not engaged in

18   substantial gainful activity since January 27, 2010, the application date.  (AR 35.)

19         At Step Two, the claimant bears the burden of showing that she has a medically severe

20   impairment or combination of impairments.  20 C.F.R. §§ 404.1520(c).  An impairment is "severe"

21   unless it is a "slight abnormality" that has "no more than a minimal effect on a person's ability to

22   work."  *Delgado v. Comm'r of Soc. Sec. Admin.*, 500 Fed. Appx. 570 (9th Cir. 2012); *see also Smolen*

23   *v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) ("[T]he step-two inquiry is a de minimis screening

24   device to dispose of groundless claims").  The ALJ found that Plaintiff has the following severe

25   impairments: an affective disorder, an anxiety-related disorder, and a substance abuse disorder in

26   remission.  (AR 35.)  The ALJ also found that Plaintiff has the medically determinable impairment of

27   hepatitis C and back pain in her right low back and hip.  (*Id*.)  He found that, "[t]hese medically

28

1    determinable impairments are not severe impairments because there is no objective evidence that they

2    more than minimally affect [Plaintiff's] ability to perform basic work functions."  (*Id.*)

3         At Step Three the ALJ compares the claimant's impairments to the impairments listed in

4    appendix 1 to subpart P of part 404.  20 C.F.R.  §§ 404.1520(d).  The claimant bears the burden of

5    showing her impairments meet or equal an impairment in the listing.  *Id.*  If the claimant is

6    successful, a disability is presumed and benefits are awarded.  *Id.*  If the claimant is unsuccessful, the

7    ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four.  *Id.*

8    §§ 404.1520(e).  Here, the ALJ found that Plaintiff does not have an impairment or combination of

9    impairments that meets or medically equals the severity of one of the listed impairments in appendix

10   1.  (AR 35-37.)  Plaintiff contests this finding, arguing that the ALJ erred by failing to evaluate listing

11   12.05, the listing for intellectual disabilities. The ALJ proceeded to assess Plaintiff's RFC and found

12   that Plaintiff "has the residual functional physical capacity to perform a full range of work at all

13   exertional levels and retains the mental abilities to engage in at least simple, repetitive tasks equating

14   to unskilled work with occasional contact with others."  (AR 37.)

15        At Step Four, the claimant bears the burden of showing she does not have sufficient RFC to

16   perform past relevant work due to his impairments and/or limitations.  *Id.* §§ 404.1520(c).  The ALJ

17   found that Plaintiff has no past relevant work at substantial gainful activity levels.  (AR 39.)

18        At Step Five, the ALJ bears the burden of establishing that considering her RFC, age,

19   education and work experience, the claimant is able to do other work that exists in significant

20   numbers in the national or local economy.  *Id.* §§ 404.1520(g).  Here, the ALJ found that considering

21   Plaintiff's age, education, work experience, and residual functional capacity, and even with a

22   limitation to unskilled work, there are jobs that exist in significant numbers in the national economy

23   that Plaintiff can perform.  (AR 39.)

24   **III.    ANALYSIS**

25   **A.    Evaluation of Intellectual Disability**

26        Plaintiff contends that the ALJ committed harmful legal error by failing to evaluate Listing

27   12.05 in Step Three of the sequential evaluation.  The ALJ analyzed Listing 12.04 for affective

28

**United States District Court**
For the Northern District of California

5

1    disorders, Listing 12.06 for anxiety disorders, and Listing 12.09 for substance abuse.  (AR 35-37.)

2    The ALJ did not, however, analyze Listing 12.05 for intellectual disabilities.

3         Plaintiff argues that she could be found disabled under Listing 12.05 under two alternative

4    theories.  First, Plaintiff argues that she could be found disabled under Listing 12.05D, which

5    requires a valid verbal, performance, or full scale IQ of 60 to 70, resulting in at least two of the

6    following:

7         1.  Marked restrictions of activities of daily living; or

8         2.  Marked difficulties in maintaining social functioning; or

9         3.  Marked difficulties in maintaining concentration, persistence, or pace; or

10        4.  Repeated episodes of decompensation, each of extended duration.

11   Medical/Professional Relations § 12.05, http://www.ssa.gov/disability/professionals/bluebook/12.00-

12   MentalDisorders-Adult.htm#12.05. The psychological consultative examination performed by Dr.

13   Bilbrey included psychometric testing that showed that Plaintiff had a performance IQ of 63 and a

14   full scale IQ of 69.  (AR 280.)  The range given to achieve a 95% confidence interval was from 66 to

15   74.  (*Id*.)  While the ALJ gave the opinions of the examiner limited weight (AR 38), the ALJ did not

16   make a specific finding regarding the validity of the IQ testing.

17        Second, Plaintiff argues that she could be found disabled under Listing 12.05C, either alone or

18   in conjunction with Listing 12.05D, due to the finding of a "valid verbal performance, or full scale IQ

19   of 60 to 70, and a physical or other mental impairment imposing an additional and significant work-

20   related limitation of function." Medical/Professional Relations § 12.05,

21   http://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12.05.

22   Plaintiff argues that these criteria are met by the IQ testing and the diagnoses of bipolar disorder,

23   psychosis, panic disorder with agoraphobia by the consultative examiner in 2010.  (AR 281.)  She

24   further argues that they are also met by the diagnoses of the treating psychiatrist, Harpett Duggal,

25   M.D., in 2010 and 2011, of bipolar disorder, PTSD, and anxiety.  (AR 585, 573, 565, 553, 542, 531.)

26        Finally, Plaintiff notes that the ALJ did not consider intellectual disability as a severe

27   impairment, in spite of the testing done at the consultative examination.  Therefore the ALJ provided

28

6

United States District Court

For the Northern District of California

1  no analysis of this potential impairment at Step Two of the sequential analysis from which to discuss

2  Step Three.

3      Defendant contends that Plaintiff's argument that she satisfies the criteria for mental

4  retardation under Listing 12.05C or 12.05D is belied by a review of medical evidence and the

5  requirements of the Commissioner's regulations.  She argues that state reviewing physician L.

6  Gottschalk, M.D., and psychologist Stephen Fair, Ph.D., found no evidence of Listing 12.05 "mental

7  retardation."  (AR 310, 417).  Defendant also argues that under the regulations, to satisfy the Listing

8  12.05C or 12.05D criteria the claimant must meet the threshold requirements for mental retardation.

9  These include a demonstration that subaverage intellectual functioning was manifested prior to age

10  22.  20 C.F.R. Pt. 404, Subpart A, Appendix 1, 12.05.  Defendant claims that there is no evidence in

11  the record that Plaintiff experienced subaverage intellectual functioning as it is defined in the relevant

12  regulation.  Defendant then identifies portions of the record which she believes show that prior to age

13  22, Plaintiff had normal intellectual functioning.  (AR 278, 386.)

14      The fact is, however, that the ALJ did not analyze intellectual impairment in either Step Two

15  or Step Three of the sequential analysis.  The court therefore cannot review the ALJ's analysis of the

16  issue and cannot carry out its duty to determine whether the ALJ's conclusion is supported by

17  substantial evidence.  Defendant's arguments regarding what the record shows are not persuasive.

18  "Long-standing principles of administrative law require us to review the ALJ's decision based on the

19  reasoning and factual findings offered by the ALJ - - not *post hoc* rationalizations that attempt to

20  intuit what the adjudicator may have been thinking."  *Bray v. Comm'r of Social Sec.*, 554 F.3d 1219,

21  1225-26 (9th Cir. 2009) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[I]n dealing with a

22  determination or judgment which an administrative agency alone is authorized to make, [courts] must

23  judge the propriety of such action solely by the grounds invoked by the agency.  If those grounds are

24  inadequate or improper, the court is powerless to affirm the administrative action by substituting

25  what it considers to be a more adequate or proper basis")).  The court finds that the ALJ erred in

26  failing to analyze intellectual disabilities in either Step Two or Step Three of the sequential analysis,

27  and that the error was not harmless.  The court will therefore remand this issue for further

28  consideration by the ALJ.

**B.    Limited Weight to Opinions of the Psychological Examiner**

Plaintiff contends that the ALJ committed harmful legal error in giving limited weight to the opinions of the psychological consultative examiner, Robert Bilbrey, Ph.D.  In regard to Plaintiff's ability to function in a workplace setting, Dr. Bilbrey opined:

> She would have marked difficulties interacting adequately with others as evidenced by her interaction with the examiner and clinic personnel.  Psychologically, the claimant would have marked difficulties concentrating or persisting independently at work-related activities at a consistent pace for a normal workday or workweek, or respond to changes in a routine work setting.  This would be due to her mood swings and psychotic symptoms.  The claimant appears able to follow one- and two-part instructions and seems able to handle simple tasks but would have marked difficulty learning complex tasks.  The claimant may have moderate difficulty conforming to a schedule, with regular and punctual attendance, because of the interruption of her symptoms and she would need some reminders.

(AR 282.)  Dr. Bilbrey also administered the Test of Memory Malingering ("TOMM"), finding that:

> The claimant performed poorly on a test of malingering.  She only identified 16 out of 50 items correctly.  This result is not only lower than chance, but also demonstrates an accurate ability to identify the wrong answer most of the time.  It may indicate that she did not put forth her best effort on the testing.

(AR 281.)  The ALJ found, "[l]imited weight can be given to Dr. Bilbrey's assessment because of the invalid testing and poor effort put forth by the claimant, as well as the inconsistency with the record as a whole."  (AR 38.)

Plaintiff argues that the ALJ's finding is not supported by substantial evidence in the record for several reasons.  First, Plaintiff argues that the testing was not found to be invalid, and that the only reference to potential invalidity is the TOMM.  Dr. Bilbrey did not issue an opinion or a finding that the testing was invalid or that malingering was determined to have impacted Plaintiff's presentation or Dr. Bilbrey's findings.  Further, the ALJ did not make a finding, based on review of the record, that any of the testing performed by Dr. Bilbrey was invalid.

Second, Plaintiff argues that there is no support in the record for malingering, and no reference in the ALJ's decision to inconsistencies in the record.  She stresses that malingering  is referenced in the ALJ's decision only in considering the results of the TOMM and a review by Dr. Bilbrey.  The ALJ decision contains no analysis of inconsistencies in the record.

Third, Plaintiff argues that the Social Security Administration considers the TOMM to be unreliable.  The Social Security Administration has issued specific warnings against purchasing

1  testing to address credibility or malingering in its Program Operations Manual System ("POMS").

2  POMS § 22510.066D states in part:

3          [d]o not purchase symptom validity tests (SVT) to address issues of credibility or
           malingering as part of a CE.  Tests cannot prove whether a claimant is credible or

4          malingering because there is no test that, when passed or failed, conclusively
           determines the presence of inaccurate self-reporting.

5  Program Operations Manual System § 22510.066D, https://secure.ssa.gov/poms.nsf/lnx/0422510006.

6

7          Fourth, Plaintiff argues that the examiner, Dr. Bilbrey, was obviously aware of the results of

8  the TOMM testing, because he had administered the test.  He was thus fully able to incorporate any

9  effects of potential malingering in his opinions.  Plaintiff stresses Dr. Bilbrey's carefully limited

10 description of the results of the TOMM when he states, "[i]t may indicate that she did not put forth

11 her best effort on the testing."  (AR 281.)  Dr. Bilbrey's opinions regarding Plaintiff, however, are

12 based on his entire psychological evaluation, including his interview of Plaintiff, the results of other

13 testing, and his observations and evaluations of the client.

14         Fifth, Plaintiff argues correctly that the findings of the IQ testing were found to have a

15 confidence level of 95% within the range of 66 to 74.  (AR 280.)  Plaintiff argues that this creates a

16 presumption that the IQ testing was valid, and there is no evidence, opinion, or finding by the ALJ

17 that the IQ testing was not valid.

18         Sixth, Plaintiff argues that other than the reference to the TOMM, there is no finding or

19 reference by the ALJ of affirmative malingering, especially as reported by treating physicians.  *See*

20 *Cha Yan v. Commissioner of Social Sec. Admin.*, 488 Fed.Appx. 203, 205 (9th Cir. 2012) (discussing

21 need for substantial evidence to support finding of malingering).

22         Defendant contends that the ALJ properly gave limited weight to the opinion of Dr. Bilbrey,

23 the consultative psychological examiner, in light of his statement regarding the results of the TOMM.

24 As discussed above, however, the Social Security Administration's own operations manual explains

25 that no one test can conclusively demonstrate malingering.  Contrary to the language in the decision

26 of the ALJ, nothing in Dr. Bilbrey's limited statement regarding the TOMM indicates a finding that

27 any or all of the testing he did was "invalid."  Defendant also contends that the ALJ properly

28 discounted Dr. Bilbrey's opinion based on inconsistencies with the record.  However, the ALJ does
   not specify what inconsistencies are at issue.  He does mention the reference to the TOMM test by a

**United States District Court**

For the Northern District of California

1   reviewing analyst and a finding of moderate limitations by a non-examining, non-treating analyst.

2   (AR 38.)  As Plaintiff argues, however, the citation by a subsequent reviewer does not provide

3   additional support for the finding of an earlier reviewer: this is circular reasoning.  A finding by a

4   non-examining, non-treating analyst is insufficient to negate the opinion of an examining, testing

5   psychologist. *See Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995) (the opinion of an examining

6   physician is entitled to greater weight than the opinion of a nonexamining physician and can only be

7   rejected for specific and legitimate reasons that are supported by substantial evidence in the record).

8         The court concludes that the ALJ's finding that only limited weight could be given to Dr.

9   Bilbrey's assessment is not supported by substantial evidence.  The court will remand this issue for

10   further consideration by the ALJ.

11   **C.      Development of Record**

12         Plaintiff contends that the ALJ failed to fully develop the record in regard to the malingering

13   issue raised by Dr. Bilbrey, and in regard to the significance of the intelligence testing he performed.

14   To the extent that the ALJ, on remand, finds that the record is unclear or ambiguous on either of these

15   issues, he must fulfill his duty to "conduct an appropriate inquiry." *Smolen*, 80 F.3d at 1288.

16   **D.      Hand Tremors**

17         Plaintiff contends that she has a well-documented history of hand tremors that would have a

18   major impact on her ability to perform light and sedentary work.  She notes that there are several

19   observations by mental health professionals that document the hand tremors.  There is a nurse's note

20   dated December 7, 2010, stating that Plaintiff, "attends online college courses through ETD, shaking

21   R/T anxiety making it difficult for her to type."  (AR 586.)  On May 9, 2011, there is a notation in an

22   RN Assessment regarding Plaintiff that "Anxiety is getting worse, shakes both hands - making it

23   difficult to do her school work."  On June 23, 2011, on an MD Progress Note regarding Plaintiff

24   "Tremors" is checked under side effects.  On August 19, 2011, an RN Assessment of Plaintiff

25   includes, "still has a lot of anxiety, hand shakiness."  Plaintiff contends that the ALJ had a duty to

26   consider these hand tremors at Step Two to determine whether they constitute a medically severe

27   impairment, and also to develop the issue to determine the impact on light and sedentary jobs.

28

1   Plaintiff did not allege the existence of hand tremors in her application and did not testify

2 before the ALJ that she suffered from hand tremors.  She only alleged disability due to bipolar

3 disorder, depression, multiple personalities, anxieties, and back, neck and right hip pain. (AR 57-58.)

4 When asked about physical problems she had at the hearing before the ALJ, she testified that she had

5 "a little bit" of physical problems, and identified problems in her back and hips.  (AR 51.)  She did not

6 mention hand tremors.

7   At Step Two of the five step sequential analysis, the burden is on the claimant to show the

8 existence of a medically severe impairment.  20 C.F.R. § 404.15209(c).  The ALJ's duty to fully

9 investigate the record is well-established, and Plaintiff argues that her mental illnesses compromised

10 her ability to fully articulate the nature of her impairments.  But Plaintiff provides this court with no

11 authority, controlling or otherwise, requiring the ALJ to comb the record, searching for potential

12 impairments beyond those asserted by a claimant.  *See generally*, *Gregg v. Barnhart*, 354 F.3d 710,

13 713 (8th Cir. 2003) (holding that an ALJ is not obliged "to investigate a claim not presented at the

14 time of the application for benefits and not offered at the hearing as a basis for disability") (quoting

15 *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir.1996)).

16   The court finds that Plaintiff has not shown legal error by the ALJ regarding the consideration

17 of hand tremors to determine whether they constitute a medically severe impairment.

18 **CONCLUSION**

19   For the reasons set forth above, the court finds that further consideration of the record is

20 necessary.  Accordingly, the court grants Plaintiff's motion for summary judgment in part and

21 remands the case to the Social Security Administration for further proceedings consistent with this

22 order.  On remand, the ALJ shall evaluate whether Plaintiff is disabled under Listing 12.05 for

23 intellectual disabilities.  If he finds that she is not, the ALJ must offer clear and convincing reasons,

24 supported by the evidence in the administrative record, for doing so.  The ALJ shall also reexamine his

25 finding that the opinion of Dr. Bilbrey, the psychological consultative examiner, was entitled to only

26 limited weight.  He shall make specific findings as to how Dr. Bilbrey's statement regarding possible

27 malingering effects the ALJ's conclusions regarding each of Dr. Bilbrey's opinions and the related

28 testing results.

11

1  The court grants Defendant's motion for summary judgment as to the issue of the ALJ's

2  consideration of hand tremors, and otherwise denies Defendant's motion.

3  The Clerk of the Court is directed to close the case.

4

5  IT IS SO ORDERED.

6

7  Dated:   June 5, 2014

8  _____
   NANDOR J. VADAS
9  United States Magistrate Judge

**United States District Court**
For the Northern District of California

12